[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15614
_____

D.C. Docket No. 4:10-cv-00436-RH-WCS

LEON COUNTY FLORIDA,
LEON COUNTY ENERGY IMPROVEMENT DISTRICT,

Plaintiffs - Appellants,

versus

FEDERAL HOUSING FINANCE AGENCY,
ACTING DIRECTOR OF FEDERAL HOUSING FINANCE AGENCY,
FEDERAL HOME LOAN MORTGAGE CORPORATION,
FEDERAL NATIONAL MORTGAGE ASSOCIATION

Defendants - Appellees,

CHARLES E. HALDEMAN, JR.,
In his capacity as Chief Executive Officer of
Federal Home Loan Mortgage Corporation, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(November 9, 2012)

Before BARKETT and JORDAN, Circuit Judges, and HODGES,[*] District Judge.

BARKETT, Circuit Judge:

Leon County, Florida and the Leon County Energy Improvement District (together, "Leon County") appeal the dismissal of their complaint against the Federal Housing Finance Agency ("FHFA"), its acting director, Charles E. Haldeman, Jr., the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), for lack of subject matter jurisdiction.[1]

On appeal, Leon County argues that by directing Fannie Mae, Freddie Mac, and the Federal Home Loan Banks to refrain from purchasing mortgages encumbered with certain first-priority lien obligations, some of which were held by Leon County, the FHFA engaged in rulemaking without providing "notice and opportunity for public comment pursuant to (the relevant provisions of the Administrative Procedure Act ("APA")]. 12 U.S.C. § 4526(b). The FHFA responds that its directive did not constitute rulemaking but was simply an exercise of its business judgment as a "conservator" of Fannie Mae and Freddie Mac and,

---

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

[1] The district court did not specify whether it dismissed Leon County's complaint pursuant to Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, in its motion to dismiss, the FHFA argued that 12 U.S.C. § 4617(f) withdrew the district court's jurisdiction, and the district court appeared to base its decision on that argument. See 12 U.S.C. § 4617(f) (articulating a limitation on court action).

2

that pursuant to § 4617(f), "no court may take any action to restrain or affect the exercise of powers or functions of the [FHFA] as a conservator or a receiver." Id. § 4617(f).

## BACKGROUND

In 2008, Congress enacted the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L., No. 110–289, 122 Stat. 2654 (codified at 12 U.S.C. § 4501 et seq.), which established the FHFA to regulate and oversee Fannie Mae and Freddie Mac, as well as the Federal Home Loan Banks, which together largely control the country's secondary market for residential mortgages. In addition to the FHFA's regulatory authority, HERA vests in the FHFA the authority to act as conservator or receiver for Fannie Mae, Freddie Mac, and the Federal Home Loan Banks. Id. § 4617(a). In September 2008, following the collapse of the housing market and the ensuing economic crisis, the FHFA became conservator of Fannie Mae and Freddie Mac and remains conservator of both entities. See Fed. Hous. Fin. Agency, Statement of FHFA Director James B. Lockhart Announcing Conservatorship of Fannie Mae and Freddie Mac (2008).

Leon County is one of many local governments to have established a Property Assessed Clean Energy ("PACE") program, which assists its citizens in obtaining funding to finance home improvements aimed at achieving energy efficiency. To secure repayment of these PACE funds, the improved property at

3

issue is encumbered with a lien which, under Florida law, takes priority over all other liens. On July 6, 2010, the FHFA instructed Fannie Mae, Freddie Mac, and the Federal Home Loan Banks to "undertake certain prudential actions" aimed at discouraging the acquisition of mortgages attached to properties encumbered with first-priority PACE liens.[2] To comply with this directive, Fannie Mae and Freddie Mac announced that it would no longer purchase mortgages subject to first-priority PACE liens originating after July 6, 2010.

Claiming that this restriction would destroy the PACE program, Leon County sought injunctive and declaratory relief to prohibit the implementation of Fannie Mae and Freddie Mac's announced restriction. The district court dismissed Leon County's complaint on the grounds that, in issuing the directive to Fannie Mae and Freddie Mac, the FHFA was acting in its capacity as a "conservator" and, pursuant to § 4617(f), "no court may take any action to restrain or affect the exercise of powers or functions of the [FHFA] as a conservator or a receiver." Id. § 4617(f). Leon County appeals that determination, seeking to avoid the jurisdictional bar in § 4617(f) by arguing that the FHFA was acting as a regulator and not as a conservator. "Our review of a district court's determination of subject

---

[2] This instruction was via a statement to Fannie Mae, Freddie Mac, and the Federal Home Loan Banks explaining that it had "determined that certain energy retrofit lending programs present significant safety and soundness concerns that must be addressed by [Fannie Mae, Freddie Mac,] and the Federal Home Loan Banks." Fed. Hous. Fin. Agency, Statement on Certain Energy Retrofit Loan Programs 1 (2010).

4

matter jurisdiction as well as statutory interpretation is <u>de novo</u>."  <u>United States v.</u>

<u>Rendon</u>, 354 F.3d 1320, 1324 (11th Cir. 2003).

## DISCUSSION

Under subchapter I of HERA, the FHFA has "[g]eneral supervisory and

regulatory authority" over Fannie Mae, Freddie Mac, and the Federal Home Loan

Banks.  12 U.S.C. § 4511(b).  Pursuant to this general regulatory authority, the

FHFA may, through its Director, "issue any regulations, guidelines, or orders

necessary to carry out the duties of the Director under this chapter or the

authorizing statutes, and to ensure the purposes of this chapter and the authorizing

statutes are accomplished."  <u>Id.</u> § 4526(a).  The "principal duties" articulated in the

statute are:

> (A) to oversee the prudential operations of each regulated entity; and
> (B) to ensure that--
>> (i) each regulated entity operates in a safe and sound manner, including maintenance of adequate capital and internal controls;
>> (ii) the operations and activities of each regulated entity foster liquid, efficient, competitive, and resilient national housing finance markets (including activities relating to mortgages on housing for low- and moderate-income families involving a reasonable economic return that may be less than the return earned on other activities);
>> (iii) each regulated entity complies with this chapter and the rules, regulations, guidelines, and orders issued under this chapter and the authorizing statutes;
>> (iv) each regulated entity carries out its statutory mission only through activities that are authorized under and consistent with this chapter and the authorizing statutes; and
>> (v) the activities of each regulated entity and the manner in which such regulated entity is operated are consistent with the public interest.

Id. § 4513(a)(1)(B).  The Director of the FHFA also has the duty to, "by regulation, establish criteria governing the portfolio holdings of [Fannie Mae and Freddie Mac], to ensure that the holdings are backed by sufficient capital and consistent with the mission and the safe and sound operations of [Fannie Mae and Freddie Mac]."  Id. § 4624(a).  When issuing regulations, the Director must provide "notice and opportunity for public comment pursuant to [the relevant provisions of the APA]."  Id. § 4526(b).

Distinct from its regulatory and supervisory authority, § 4617(a) authorizes the FHFA to appoint itself conservator or receiver of Fannie Mae, Freddie Mac, and/or the Federal Home Loan Banks "for the purpose of reorganizing, rehabilitating, or winding up the affairs of a regulated entity."  Id. § 4617(a)(2).  When the FHFA became the conservator of Fannie Mae and Freddie Mac in September 2008, the FHFA "immediately succeed[ed] to . . . all rights, titles, powers and privileges of [Fannie Mae and Freddie Mac] . . . ."  12 U.S.C. § 4617(b)(2)(A)(i).  As conservator, the FHFA is vested with the "[p]owers" to:

> take such action as may be—
> (i) necessary to put the regulated entity in a sound and solvent condition; and
> (ii) appropriate to carry on the business of the regulated entity and preserve and conserve the assets and property of the regulated entity.

Id. § 4617(b)(2)(D).  As conservator, the FHFA may "[o]perate" Fannie Mae and Freddie Mac by:

6

(i) tak[ing] over the assets of and operat[ing] the regulated entity with all the powers of the shareholders, the directors, and the officers of the regulated entity and conduct[ing] all business of the regulated entity;

(ii) collect[ing] all obligations and money due the regulated entity;

(iii) perform[ing] all functions of the regulated entity in the name of the regulated entity which are consistent with the appointment as conservator or receiver;

(iv) preserv[ing] and conserv[ing] the assets and property of the regulated entity; and

(v) provid[ing] by contract for assistance in fulfilling any function, activity, action, or duty of the [FHFA] as conservator or receiver.

Id. § 4617(b)(2)(B).  Section 4617(f) limits judicial review of the FHFA's actions as conservator, stating that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator or receiver."  Id. § 4617(f).

Although it may appear at first blush that many of the functions of the FHFA as regulator and as conservator overlap, we consider both the concept and function of a conservatorship and the overall statutory scheme to determine whether the actions of the FHFA in issuing its directive regarding PACE mortgages should be deemed an act taken by the FHFA as conservator, insulated from judicial review, or an act of rulemaking within its function as a regulator.

We recognize that when a directive is issued by the FHFA that applies across the board to an entire category of cases, it contains an aspect of rulemaking and should therefore be carefully examined to assure that the FHFA is not simply attempting to avoid its responsibility to give notice and provide an opportunity for

7

public comment.  The FHFA cannot evade judicial scrutiny by merely labeling its actions with a conservator stamp.  Congress did not intend that the nature of the FHFA's actions would be determined based upon the FHFA's self-declarations because the distinction between regulator and conservator would be one without a meaning or effect.  Moreover, "if the FHFA were to act beyond statutory or constitutional bounds in a manner that adversely impacted the rights of others, § 4617(f) would not bar judicial oversight or review of its actions."  In re Fed. Home Loan Mortg. Corp. Derivative Litig., 643 F. Supp. 2d 790, 799 (E.D. Va. 2009) (citation omitted), aff'd sub nom. La. Mun. Police Emps. Ret. Sys. v. Fed. Hous. Fin. Agency, 434 F. App'x 188 (4th Cir. 2011) (per curiam).  With that concern in mind, we must consider all relevant factors pertaining to the directive to determine whether it was issued pursuant to the FHFA's powers as conservator or as regulator.  These would include, for example, its subject matter, its purpose, its outcome, and whether it involves a matter in which public comment might be relevant, appropriate, useful or intended by Congress.

The directive in this case identified a specific form of security interest priming a relatively small number of residential mortgages available to Fannie Mae and Freddie Mac in the mortgage market as a whole.  The directive had a very narrow field of operation.  It did not establish a general set of criteria to be applied across the board by Fannie Mae and Freddie Mac to their mortgage transactions in

general.  A directive in that form would have the mark of a regulation.  The directive at issue here, by comparison, does not contain any indicia of a general regulation and looks more like a discreet management decision by a conservator.

After carefully considering the directive here, we are satisfied that it comports with the duties, purpose, and actions of a prudent conservator and does not constitute an act of rulemaking.  A conservator is one who has been given the legal authority to establish control of an entity to put it in a sound and solvent condition.  Essentially, the powers of the directors, officers, and shareholders of the entity in conservatorship are transferred to the conservator, and those powers include marshaling, protecting, and managing assets.  Part of managing the assets and assuring the solvency of a mortgage-purchasing entity is considering the degree of risk entailed by the acquisition of particular mortgages.  It is fully within the responsibilities of a protective conservator, acting as a prudent business manager, to decline to purchase a mortgage when its lien will be relegated to an inferior position for repayment.  The fact that the conservator declines to purchase any—or many—mortgages in which another entity holds a first-priority lien does not turn the FHFA's business decision into an act of rulemaking.  Rather it is clearly within the broad powers given by Congress to the FHFA as conservator to take actions "necessary to put [Fannie Mae and Freddie Mac] in a sound and solvent condition" and "to carry on the business of [Fannie Mae and Freddie Mac]"

9

in a way that will "preserve and conserve" its assets.  12 U.S.C. § 4617(b)(2)(D).

As the Second Circuit recently noted, "[d]irecting protective measures against

perceived risks is squarely within FHFA's powers as conservator."  Town of

Babylon v. Fed. Hous. Fin. Agency,— F.3d —, Nos. 11-3408-CV, 11-3285-CV,

2012 WL 5233601, at *3 (2d Cir. Oct. 24, 2012).  Moreover, the function of

providing an opportunity for public comment has considerably less resonance

where, as here, the disagreement with the directive would simply be a

disagreement with a business assessment regarding the level of an investment risk.

For all of these reasons, we agree with the district court that, under the

specific facts in this case, the FHFA's directive not to purchase PACE-encumbered

mortgages was within the FHFA's broad powers as conservator.  Accordingly,

because § 4617(f) provides that "no court may take any action to restrain or affect

the exercise of powers or functions of the [FHFA] as a conservator or receiver,"

see 12 U.S.C. § 4617(b), the district court correctly held that § 4617(f) bars Leon

County's claims.

**AFFIRMED.**

10