**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COUNTY OF SONOMA; PEOPLE OF
THE STATE OF CALIFORNIA, ex rel.
KAMALA D. HARRIS, Attorney
General; SIERRA CLUB; CITY OF
PALM DESERT,
               *Plaintiffs-Appellees*,

COUNTY OF PLACER,
     *Intervenor-Plaintiff-Appellee*,

v.

FEDERAL HOUSING FINANCE
AGENCY; EDWARD DEMARCO, in
his capacity as Acting Director of
Federal Housing Finance Agency,
          *Defendants-Appellants*,

and

FEDERAL HOME LOAN
MORTGAGE CORPORATION;
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,
                *Defendants*.

No. 12-16986

D.C. Nos.
4:10-cv-03270-CW
4:10-cv-03084-CW
4:10-cv-03317-CW
4:10-cv-04482-CW

OPINION

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, Chief District Judge, Presiding

Submitted December 22, 2012[*]

Filed March 19, 2013

Before: Stephen Reinhardt, John T. Noonan,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Murguia

## SUMMARY[**]

### Federal Housing Finance Agency

The panel vacated the district court's order and dismissed for lack of jurisdiction a case challenging a Federal Housing Finance Agency directive.

The FHFA issued a "directive" preventing Freddie Mac and Fannie Mae from buying mortgages on properties encumbered by liens made under property-assessed clean energy programs ("PACE"), which finance environmental improvements on residential properties. The panel held that

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the FHFA's decision to cease purchasing mortgages on PACE-encumbered properties is a lawful exercise of its statutory authority as conservator of Freddie Mac and Fannie Mae. The panel held that the courts have no jurisdiction to review actions that the FHFA takes as a conservator, and dismissed the case.

## COUNSEL

Stephen E. Hart, Federal Housing Finance Agency; Howard N. Cayne, Lisa S. Blatt and Asim Varma, Arnold & Porter LLP, Washington, D.C., for Defendants–Appellants.

Kamala D. Harris, Attorney General of California; Janill L. Richards, Supervising Deputy Attorney General; Jason A. Malinsky, Deputy Attorney General, Oakland, California, for Plaintiffs–Appellees.

## OPINION

MURGUIA, Circuit Judge:

Defendant–Appellant Federal Housing Finance Agency ("FHFA") is the regulator and conservator of Freddie Mac and Fannie Mae (the "Enterprises"). The Enterprises are government-sponsored entities that purchase and securitize residential mortgages. FHFA issued a "directive" preventing the Enterprises from buying mortgages on properties encumbered by liens made under so-called property-assessed clean energy ("PACE") programs, which finance environmental improvements on residential properties—and in return take an interest in those properties senior to any

mortgagees' interest. Plaintiffs–Appellees, including the State of California and several of its counties, are stakeholders in PACE programs. Plaintiffs–Appellees contend that FHFA acted as a regulator, and not a conservator, when it directed the Enterprises to cease purchasing mortgages on PACE-encumbered properties. And in acting as a regulator, Plaintiffs–Appellees argued in the district court, FHFA would require more than a fiat to order the Enterprises to stop buying mortgages on PACE-encumbered properties: as a regulator, Plaintiffs–Appellees contended, FHFA must issue a regulation to effectuate its order.

The district court entered a preliminary injunction requiring FHFA to complete a formal rulemaking under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, in order to implement its directive on PACE-encumbered properties properly. FHFA appealed, and we stayed the injunction insofar as it required FHFA to issue a final rule. We then deferred any further action on FHFA's appeal until after the district court ruled on the parties' motions for summary judgment. The district court entered summary judgment in Plaintiffs'–Appellees' favor, finding that FHFA "failed to comply with the APA's notice and comment requirement." The district court enjoined FHFA to complete notice-and-comment rulemaking within 210 days from the issuance of its judgment. FHFA again appealed.

We now conclude that FHFA's decision to cease purchasing mortgages on PACE-encumbered properties is a lawful exercise of its statutory authority as conservator of the Enterprises. Because the courts have no jurisdiction to review actions that FHFA takes as conservator, we **VACATE** the district court's order and **DISMISS** the case.

## I. Background

## A. Housing and Economic Recovery Act of 2008

The Enterprises, Fannie Mae and Freddie Mac, purchase and securitize residential mortgages. They are governed by the Federal Housing Enterprises Financial Safety and Soundness Act of 1992 ("Safety and Soundness Act"), 12 U.S.C. §§ 4501, *et seq*.

In 2008, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), which amended the Safety and Soundness Act. Pub. L. No. 110-289, 122 Stat. 2654 (codified at 12 U.S.C. § 4511). HERA established the Federal Housing Finance Agency ("FHFA"), an independent agency charged with supervising the Enterprises and the Federal Home Loan Banks. FHFA has statutory powers as both the regulator and the conservator of the Enterprises. As regulator, FHFA must ensure that the Enterprises operate "in a safe and sound manner," "foster liquid, efficient, competitive, and resilient national housing finance markets," operate "consistent[ly] with the public interest," and comply with all applicable laws. 12 U.S.C. § 4513(a)(1)(B). The FHFA Director "shall issue any regulations, guidelines, or orders necessary to carry out the duties of the Director." *Id.* § 4526(a). FHFA's regulations are subject to APA notice-and-comment rulemaking. *Id.* § 4526(b).

HERA also grants FHFA the power to place the Enterprises into conservatorship, and FHFA did so on September 6, 2008. *See* 12 U.S.C. § 4617(a)(2) ("[FHFA] may, at the discretion of the Director, be appointed conservator or receiver for the purpose of reorganizing, rehabilitating, or winding up the affairs of a regulated

entity."). The conservatorships were the result of the economic downturn and housing market collapse, which eroded the value of the Enterprises' assets. FHFA has separate statutory powers as conservator of the Enterprises. As conservator, FHFA succeeds to "all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity." *Id.* § 4617(b)(2)(A). HERA further enumerates other broad powers FHFA has as conservator, including to take actions "necessary to put the regulated entity in a sound and solvent condition" and actions as may be appropriate to "preserve and conserve the assets and property of the regulated entity." *Id.* § 4617(b)(2)(D). FHFA has the "incidental power[]" to take "any action authorized by this section, which the Agency determines is in the best interests of the regulated entity or the Agency." *Id.* § 4617(b)(2)(J)(ii).

HERA substantially limits judicial review of FHFA's actions as conservator. The law states: "Except as provided in this section or at the request of the Director, *no court may take any action to restrain or affect* the exercise of powers or functions of the Agency as a conservator or a receiver." *Id.* § 4617(f) (emphasis added). Accordingly, if the directive challenged here is a lawful exercise of FHFA's power as conservator of the Enterprises, the courts have no jurisdiction over Plaintiffs'–Appellees' claims, and this case must be dismissed.

## B.  Property-Assessed Clean Energy Programs

States—including California—and municipalities have long used their powers to assess levies on real property to finance community improvements, such as sidewalks and

lighting.  *See, e.g.*, Cal. Const. art. 13D (establishing that governments may levy special assessments against real property to pay for permanent public improvements).  In a more recent use of this assessment authority, legislatures have authorized state and local governments to implement PACE programs.  The programs provide financing for individual home improvements aimed at reducing water and energy use and providing clean power.  A government entity pays the cost of the retrofit and imposes an assessment on the real property in the amount of the improvement cost.  The funds are raised through the sale of bonds, and assessment revenue is pledged to repay the bonds.

California authorized cities and counties to establish PACE programs in July 2008.  Cal. Sts. & High. Code §§ 5898.12(b), 5898.20.  Pursuant to California law, PACE assessments create liens on real property that have priority over mortgages.  Property owners pay a portion of the assessment annually as part of their property tax payments.  *Id*. § 5898.30.  When the property is transferred, sold, or foreclosed upon, any amount that is delinquent is due.  The remainder of the assessment remains as a lien on the property.  Cal. Rev. & Tax. Code § 3712.  Speaking generally, foreclosure of a higher-priority—senior—lien on property (*e.g.*, a PACE lien) terminates any junior liens on the property (*e.g.*, a mortgage purchased by one of the Enterprises).  *See* Restatement (Third) of Property (Mortgages) § 7.1 (1997).

## C.  FHFA's Directive Regarding PACE programs

On June 18, 2009, FHFA's Director sent a letter about PACE programs to the leaders of associations representing state bank supervisors, credit union supervisors, residential mortgage lenders, state governors, and state legislatures. The

letter described the "emerging trend" of PACE programs, and stated that the effect of the "first lien status" of PACE loans is "to impair the value of first mortgages to creditors and any subsequent holder of first mortgages and, at the same time, to create risks for homeowners." The Director stated further that the programs may "create risks to homeowners by increasing borrower debt payments that could cause a greater possibility of default; [and have a] negative impact on the marketability of the home."

On May 5, 2010, Fannie Mae and Freddie Mac each issued a lender letter to the home mortgage industry. The Fannie Mae letter stated that PACE loans generally have first lien priority over previously recorded mortgages and the Enterprises' Uniform Security Instruments prohibit loans with lien status senior to a mortgage's.[1] The Freddie Mac letter explained that energy-related liens may not be senior to mortgages delivered to Freddie Mac.

On July 6, 2010, FHFA issued a "Statement on Certain Energy Retrofit Loan Programs." FHFA distinguished PACE "loans" from routine tax assessments in that their size and duration exceed typical local tax programs and lack the community benefits associated with taxing initiatives. FHFA stated that the loans present significant risk to lenders and secondary market entities, may alter valuations for mortgage-backed securities, and are not essential for energy conservation. FHFA stated further that PACE underwriting "results in collateral-based lending rather than lending based upon ability-to-pay, the absence of Truth-in-Lending Act and other consumer protections, and uncertainty as to whether

---

[1] The Uniform Security Instruments are the documents used when originating mortgage loans.

home improvements actually produce meaningful reductions in energy consumption." FHFA said the PACE programs' first liens could disrupt a fragile housing market, noting the absence of underwriting standards to protect homeowners and the absence of energy saving standards to allow for the valuation of the home improvements. Together, FHFA said, these issues "combine to raise safety and soundness concerns."

In the July 6 letter, FHFA directed the Enterprises to: (1) "[a]djust[] loan-to-value ratios to reflect the maximum permissible PACE loan amount available to homeowners in PACE jurisdictions;" (2) "[e]nsur[e] loan covenants require approval/consent for any PACE loan;" (3) "[t]ighten[] borrower debt-to-income ratios to account for additional obligations that could be associated with possible future PACE loans;" and (4) "[e]nsur[e] that mortgages on properties in a jurisdiction offering PACE-like programs satisfy all applicable federal and state lending regulations and guidance." FHFA further instructed the Federal Home Loan Banks, over which it has regulatory authority—but not a conservatorship—to "review their collateral policies in order to assure that pledged collateral is not adversely affected by energy retrofit programs that include first liens." On July 14, 2010, FHFA issued a statement that, in keeping with its safety and soundness obligations, FHFA would vigorously defend the policies laid out in the July 6, 2010 directive.

On August 31, 2010, Freddie Mac and Fannie Mae each issued letters to lenders stating that the Enterprises would cease purchasing mortgage loans secured by a property with an outstanding PACE loan, originating on or after July 6,

2010, with first lien priority.[2]   Additionally, the Enterprises required that in order to refinance a PACE-encumbered property, an owner must generally pay off the entire outstanding PACE assessment.

Finally, on February 28, 2011, after this litigation began, FHFA sent a letter to the Enterprises' general counsels.  The letter stated, "The Conservator reaffirms that PACE programs present significant risks to certain assets and property of the Enterprises—mortgages and mortgage-related assets—and pose unusual and difficult risk management challenges for the Enterprises."  FHFA expressly invoked its statutory authority as conservator under 12 U.S.C. § 4617, as well as its duty to preserve and conserve the Enterprises' assets, and directed the Enterprises to "continue to refrain from purchasing mortgage loans secured by properties with outstanding first-lien PACE obligations and carefully monitor through their seller-servicers any programs that create such first-lien obligations."

**D.  Prior Proceedings**

In 2010, the State of California, the Sierra Club, Sonoma County, Placer County, and the City of Palm Desert all filed actions against FHFA and related entities concerning the PACE directives.  The claim germane to this appeal, made in each of the operative complaints, is that the July 6, 2010, directive from FHFA to the Enterprises constituted a "rule" under the APA, and therefore could not have been issued lawfully until FHFA engaged in formal rulemaking.

---

[2]  The FHFA "grandfathered" in PACE first-priority liens for homeowners who obtained PACE loans before July 6, 2010.

Sonoma County moved for a preliminary injunction, which the district court granted, holding that section 4617(f)'s prohibition on judicial review of FHFA's actions as a conservator was inapplicable, because FHFA engaged in substantive rulemaking beyond a conservator's ken. The district court left in place FHFA's directive to the Enterpises, but ordered FHFA to commence formal rulemaking. The preliminary injunction was stayed pending appeal.

Following oral argument on FHFA's appeal of the preliminary injunction, we submitted the case and issued an order stating that we would take no action on this appeal until after the district court ruled on the parties' motions for summary judgment, which had been filed in the interim. The district court granted summary judgment in Plaintiffs'–Appellees' favor and, finding that FHFA failed to comply with the APA's formal rulemaking requirements, entered an order requiring FHFA to publish a final rule concerning the PACE programs by "210 days from the date of entry of this Judgment," October 16, 2012.

## II. Standard of Review

We review de novo the district court's summary judgment. *Pac. Coast Fed'n of Fishermen's Ass'ns v. Blank*, 693 F.3d 1084, 1091 (9th Cir. 2012).

## III.   Discussion

As courts may take no "action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver," 12 U.S.C. § 4617(f), the question before us is whether FHFA's directive to the Enterprises to discontinue purchasing PACE-encumbered mortgages is a

lawful exercise of its authority as conservator of the Enterprises—rather than, as the district court concluded, an improper exercise of its power as a regulator. If the PACE directive falls within FHFA's conservator powers, it is insulated from review and this case must be dismissed. Conversely, the anti-judicial review provision is inapplicable when FHFA acts beyond the scope of its conservator power. *See Sharpe v. FDIC*, 126 F.3d 1147, 1155 (9th Cir. 1997) (holding that statutory bar on judicial review of the Federal Deposit Insurance Corporation's actions taken as conservator or receiver "does not bar injunctive relief when the FDIC has acted beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions." (internal quotation marks omitted)).

The scope of FHFA's power as conservator is a matter of first impression before this Court, but no longer a matter of first impression among our sister circuits. In *Town of Babylon v. FHFA*, 699 F.3d 221 (2d Cir. 2012), the Second Circuit held that courts were precluded by section 4617(f) from adjudicating certain claims including, among others, that FHFA violated the APA by failing to engage in formal rulemaking before issuing the same directive we address in this case. 699 F.3d at 225–28. The Eleventh Circuit followed in *Leon County, Florida v. FHFA*, 700 F.3d 1273 (11th Cir. 2012), holding that the July 6, 2010, "directive not to purchase PACE-encumbered mortgages was within the FHFA's broad powers as a conservator," and therefore placed beyond the scope of the courts' review by section 4617(f).[3] 700 F.3d at 1279.

---

[3] The district court lacked the benefit of the Second and Eleventh Circuits' analyses when it issued both its preliminary injunction and the judgment that FHFA now appeals.

We agree. As conservator, FHFA has "all the rights, titles, powers and privileges of the [Enterprises]." 12 U.S.C. § 4617(b)(2)(A)(i). HERA permits FHFA to take actions that are "appropriate to carry on the business of the [Enterprises] and preserve and conserve the assets and property of the [Enterprises]." 12 U.S.C. § 4617(b)(2)(D)(ii). FHFA can, as conservator, take over the Enterprises and operate them with all the powers of the shareholders, directors, and officers of the Enterprises, and conduct all business of the Enterprises. *Id.* § 4617(b)(2)(B)(i). Further, under its operating powers, FHFA also has the power to "preserve and conserve the assets and property of the [Enterprises]." *Id.* § 4617(b)(2)(B)(iv).

A decision not to buy assets that FHFA deems risky is within its conservator power to "carry on" the Enterprises' business and to "preserve and conserve the assets and property of the [Enterprises]." 12 U.S.C. § 4617(b)(2)(D)(ii). The Enterprises' business is to purchase and securitize mortgages, and FHFA carries on that business when it weighs the relative risks and benefits of purchasing classes of mortgages for investment. When FHFA decides not to purchase a class of mortgages that it believes pose excessive risk, it is attempting to preserve and conserve the Enterprises' assets and property. Indeed, careful management of its mortgage purchase decisions appears to be the only way FHFA can avoid the financial problems which precipitated the Enterprises' conservatorship. Although FHFA's powers as conservator are not limitless, the ability to decide which mortgages to buy is an inherent component of FHFA's charge to preserve and conserve the Enterprises' assets. *See Leon Cnty.*, 700 F.3d at 1279 ("It is fully within the responsibilities of a protective conservator, acting as a prudent business manager, to decline to purchase a mortgage when its lien will be relegated to an inferior position for payment."); *see also*

*Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1059 (9th Cir. 1996) (holding that the FDIC acted "well within its broad statutory powers as receiver" when it sold limited partnerships in which an insolvent bank had an interest, and its actions were therefore insulated from judicial review by a statutory restriction analogous to 12 U.S.C. § 4617(f)).

Further, although it is not our place to substitute our judgment for FHFA's, there is, in this case, no doubt that FHFA's actions relate directly to the soundness of the Enterprises' assets. The PACE liens affected by FHFA's directive are superior to the mortgages owned and securitized by the Enterprises. As FHFA explains, such superior liens increase the risks borne by a mortgage-holder substantially: if a borrower is unable to continue paying his mortgage and the property is sold at foreclosure, the proceeds from the foreclosure sale go to the PACE lender first. A mortgage-holder is thus left with only what remains after the superior PACE lien is paid, making it less likely that the mortgage-holder—here, the Enterprises whose assets FHFA is tasked with protecting—will be able to recover its investment. As FHFA observes, PACE liens need not be superior to home mortgages; other states have authorized PACE liens that are subordinate to mortgages and thus do not jeopardize the Enterprises' assets. *See, e.g.*, Vt. Stat. Ann. tit. 24, § 3255. That these subordinate PACE liens are unaffected by FHFA's directive is additional evidence that it was animated by a concern for the soundness of the Enterprises' assets.

The district court observed that FHFA's July 6, 2010, letter addressed not just the Enterprises—of which FHFA is conservator—but also the Federal Home Loan Banks, of which FHFA is only a regulator. The breadth of the letter's audience, the district court reasoned, suggests that the

directive FHFA issued in that letter was a regulation requiring a formal rulemaking. The letter, however, directed the Enterprises and the Federal Home Loan Banks to do different things: the Enterprises were directed to take the action that formed the germ of this lawsuit; the Federal Home Loan Banks were directed only to review their collateral policies. That FHFA treated different entities differently undermines, not supports, the conclusion that it was undertaking regulatory activity applicable to all the entities under its regulatory purview.

The district court further observed that the breadth and prospective nature of FHFA's action suggested it had engaged in backdoor rulemaking. While both the breadth and prospective nature of an agency's action are hallmarks of an administrative rule, *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994), their presence alone does not dispose of the question in this case, because we do not assume from the outset that FHFA acted as a regulator rather than as a conservator. In other words, if we begin from the premise that FHFA's directive was issued in its capacity as a regulator, we might conclude the directive was a rule and that formal rulemaking procedures were required. But as we are trying to establish whether FHFA acted as a regulator in the first place, the rule-like nature of its action is somewhat less probative, because nothing precludes a conservator from making business decisions that are both broad in scope and entirely prospective. Consequently, we agree with the Eleventh Circuit's observation that "[t]he fact that a conservator declines to purchase any—or many—mortgages in which another entity holds a first-priority lien does not turn the FHFA's business decision into an act of rulemaking." *Leon Cnty.*, 700 F.3d at 1279. The categorical nature of the PACE directive, as opposed to a

case-by-case refusal to purchase PACE-encumbered mortgages, does not change the fact that FHFA's decision is in furtherance of the conservation and preservation of the Enterprises' assets.

In concluding that the PACE directive is a lawful exercise of FHFA's power as conservator of the Enterprises, we recognize that FHFA's power has limits.   As FHFA acknowledges, HERA distinguishes between FHFA's authority as regulator and as conservator, and FHFA cannot evade judicial review and the APA's requirements for rulemaking simply by invoking its authority as conservator. Analysis of any challenged action is necessary to determine whether the action falls within the broad, but not infinite, conservator authority.

Because we conclude that FHFA acted within its powers as conservator, neither we nor the district court have jurisdiction over Plaintiffs'–Appellees' claims.  Because we dismiss this case for lack of jurisdiction, we do not address FHFA's alternative contention, that the district court erred on the merits in its determination that the APA applied to FHFA's directive.  Accordingly, we **VACATE** the district court's order and **DISMISS** this case.