KELLY, Circuit Judge.
 

 Three shareholders claim that the federal agency Congress created to serve as conservator of Fannie Mae
 
 [1]
 
 and Freddie Mac
 
 [2]
 
 exceeded its powers and acted arbitrarily and capriciously. Four of our sister circuits-the Fifth,
 
 [3]
 
 Sixth, Seventh, and D.C. Circuits-have already rejected materially identical arguments from other shareholders. Today, we join them.
 

 I.
 

 The financial crisis of 2008 prompted Congress to take several actions to fend off economic disaster. One of those measures propped up Fannie Mae and Freddie Mac. Fannie and Freddie, which were founded by Congress back in 1938 and 1970, buy home mortgages from lenders, thereby freeing lenders to make more loans.
 
 See
 

 generally
 

 12 U.S.C. § 4501
 
 . Although established by Congress, Fannie and Freddie operate like private companies: they have shareholders, boards of directors, and executives appointed by those boards. But Fannie and Freddie also have something most private businesses do not: the backing of the United States Treasury.
 

 In 2008, with the mortgage meltdown at full tilt, Congress enacted the Housing and Economic Recovery Act (HERA or the Act). HERA created the Federal Housing Finance Agency (FHFA), and gave it the power to appoint itself either conservator or receiver of Fannie or Freddie should either company become critically undercapitalized.
 
 12 U.S.C. § 4617
 
 (a)(2), (4). The Act includes a provision limiting judicial review: "Except as provided in this section or at the request of the Director, no court may take any action to restrain or affect the exercise of powers or functions of the [FHFA] as a conservator or a receiver."
 

 Id.
 

 § 4617(f).
 

 Shortly after the Act's passage, FHFA determined that both Fannie and Freddie were critically undercapitalized and appointed itself conservator. FHFA then entered an agreement with the U.S. Department of the Treasury whereby Treasury would acquire specially-created preferred stock and, in exchange, would make hundreds of billions of dollars in capital available to Fannie and Freddie. The idea was that Fannie and Freddie would exit conservatorship when they reimbursed the Treasury.
 

 But Fannie and Freddie remain under FHFA's conservatorship today. Since the
 conservatorship began, FHFA and Treasury have amended their agreement several times. In the most recent amendment, FHFA agreed that, each quarter, Fannie and Freddie would pay to Treasury their entire net worth, minus a small buffer. This so-called "net worth sweep" is the basis of this litigation.
 

 Three owners of Fannie and Freddie common stock sued FHFA and Treasury, claiming they had exceeded their powers under HERA and acted arbitrarily and capriciously by agreeing to the net worth sweep. The shareholders sought only an injunction setting aside the net worth sweep; they dismissed a claim seeking money damages. Relying on the D.C. Circuit's opinion in
 
 Perry Capital LLC v. Mnuchin
 
 ,
 
 864 F.3d 591
 
 (D.C. Cir. 2017), the district court
 
 [4]
 
 dismissed the suit.
 

 II.
 

 The shareholders argue their claims should have survived dismissal because FHFA and Treasury exceeded their statutory authority under HERA by agreeing to the net worth sweep. We review the dismissal of the shareholders' case de novo.
 
 Dunbar v. Wells Fargo Bank
 
 ,
 
 709 F.3d 1254
 
 , 1256 (8th Cir. 2013) ;
 
 ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters
 
 ,
 
 645 F.3d 954
 
 , 958 (8th Cir. 2011).
 

 A.
 

 We begin with the shareholders' request for an injunction against FHFA. Their argument has two parts. First, they assert that HERA's limitation on judicial review does not apply when FHFA exceeds its statutory powers under the Act. Second, they contend that the net worth sweep exceeds, and is antithetical to, FHFA's statutory powers.
 

 1.
 

 HERA commands that, "[e]xcept as provided in this section or at the request of the Director, no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator or a receiver."
 
 12 U.S.C. § 4617
 
 (f). We agree with our sister circuits that this provision bars only equitable relief, and only does so if the challenged action is within the powers given FHFA by HERA.
 
 See
 

 Collins
 
 , at 652-53;
 
 Roberts v. Fed. Hous. Fin. Agency
 
 ,
 
 889 F.3d 397
 
 , 402 (7th Cir. 2018) ;
 
 Robinson v. Fed. Hous. Fin. Agency
 
 ,
 
 876 F.3d 220
 
 , 228 (6th Cir. 2017) ;
 
 Perry Capital
 
 ,
 
 864 F.3d at
 
 606 ;
 
 see also
 

 Cty. of Sonoma v. Fed. Hous. Fin. Agency
 
 ,
 
 710 F.3d 987
 
 , 992-93 (9th Cir. 2013).
 

 The shareholders argue that we must construe § 4617(f), an anti-injunction provision, narrowly. They cite to the "presumption of reviewability," which generally requires "that 'only upon a showing of "clear and convincing evidence" of a contrary legislative intent should the courts restrict access to judicial review.' "
 
 Bowen v. Mich. Acad. of Family Physicians
 
 ,
 
 476 U.S. 667
 
 , 671,
 
 106 S.Ct. 2133
 
 ,
 
 90 L.Ed.2d 623
 
 (1986) (quoting
 
 Abbott Labs. v. Gardner
 
 ,
 
 387 U.S. 136
 
 , 141,
 
 87 S.Ct. 1507
 
 ,
 
 18 L.Ed.2d 681
 
 (1967) ). When a statute appears to limit a court's jurisdiction to review agency action, courts usually invoke this presumption and narrowly interpret the statutory provisions at issue.
 
 See, e.g.
 
 ,
 
 id.
 
 at 674-78,
 
 106 S.Ct. 2133
 
 .
 
 [5]
 

 But see
 

 Briscoe v. Bell
 
 ,
 
 432 U.S. 404
 
 , 410,
 
 97 S.Ct. 2428
 
 ,
 
 53 L.Ed.2d 439
 
 (1977) (reversing a narrow construction of a jurisdiction-stripping statute because the statutory "language is absolute on its face and would appear to admit of no exceptions"). Here, like our sister circuits, we interpret the anti-injunction provision to apply only to equitable relief, and only where FHFA has acted within its statutory powers. That reading is consistent with the presumption of reviewability.
 

 2.
 

 We next consider whether FHFA exceeded its conservatorship powers. To answer this question of statutory interpretation, we examine two portions of § 4617(b)(2). The first is subsection (B), which grants FHFA general powers that apply when it is acting as either a conservator or a receiver. These powers are phrased permissively: "[FHFA]
 
 may
 
 , as conservator or receiver" do such things as "take over the assets and operate [the companies]," "perform all functions of [the companies]," and "preserve and conserve the assets and property of the [companies]."
 
 12 U.S.C. § 4617
 
 (b)(2)(B) (emphasis added). Second, we look to subsection (D), which sets out powers specific to FHFA's role as a conservator. These powers are also phrased permissively: "[FHFA]
 
 may
 
 , as conservator, take such actions as
 
 may
 
 be (i) necessary to put the [companies] in a sound and solvent condition; and (ii) appropriate to carry on the business and preserve and conserve the assets and property of the regulated entity."
 
 12 U.S.C. § 4617
 
 (b)(2)(D) (emphasis added).
 

 The shareholders first contend that, although these passages use the permissive "may," they are really mandatory and can be rephrased to say, for instance, that FHFA may
 
 not
 
 take actions that would
 
 not
 
 put the companies in a sound and solvent condition. We disagree. Not every statutory "may" is coupled with an implied "may not." Reading § 4617(b) as a whole, it is clear that Congress intended the permissive "may" to grant FHFA broad discretion in its management and operation of Fannie and Freddie. This reading is supported by the fact that Congress also used mandatory "shall" language in the same section.
 
 See, e.g.
 
 ,
 
 12 U.S.C. § 4617
 
 (b)(2)(E) ("In any case in which [FHFA] is acting as receiver, [FHFA]
 
 shall
 
 place the regulated entity in liquidation ...." (emphasis added) );
 

 id.
 

 § 4617(b)(2)(H) ("[FHFA], as conservator or receiver,
 
 shall
 
 ... pay all valid obligations of the regulated entity ...." (emphasis added) ). As the D.C. Circuit put it, "the most natural reading of [HERA] is that it permits FHFA, but does not compel it in any judicially enforceable sense, to preserve and conserve Fannie's and Freddie's assets and to return the Companies to private operation."
 
 Perry Capital
 
 ,
 
 864 F.3d at 607
 
 .
 

 The shareholders next argue that the net worth sweep hurts Fannie and Freddie more than it helps, and so is antithetical to FHFA's role as conservator. This argument invokes traditional notions of conservatorship. But HERA does not subscribe to these notions. HERA authorizes FHFA to act "in the best interests" of either Fannie and Freddie or
 
 itself
 
 .
 
 12 U.S.C. § 4617
 
 (b)(2)(J)(ii). This provision "directly undermines [the shareholders'] supposition that Congress intended FHFA
 

 to be nothing more than a common-law conservator."
 
 Perry Capital
 
 ,
 
 864 F.3d at
 
 613 ;
 
 see also
 

 Robinson
 
 ,
 
 876 F.3d at 230
 
 . In short, HERA does not limit FHFA to the discretion traditionally ascribed to conservators.
 

 Finally, the shareholders say that we must narrowly construe FHFA's powers to avoid nondelegation problems. But "[t]he canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as a means of choosing between them."
 
 Clark v. Martinez
 
 ,
 
 543 U.S. 371
 
 , 385,
 
 125 S.Ct. 716
 
 ,
 
 160 L.Ed.2d 734
 
 (2005). HERA presents no such choice; its plain language speaks clearly enough.
 

 In sum, the complaint alleges that FHFA is stripping Fannie and Freddie of its capital in an effort to make money for Treasury. But we agree with the district court that FHFA has not exceeded its powers in assenting to the net worth sweep.
 
 [6]
 
 As a result, HERA's anti-injunction provision applies, ending the case against FHFA.
 

 B.
 

 The shareholders also seek an injunction barring Treasury from participating in the net worth sweep. Again our starting point is whether the anti-injunction provision applies. The shareholders say that it does not because the injunction they seek would restrain Treasury, not FHFA. That argument ignores the plain language of the anti-injunction provision, which bars injunctions that "
 
 restrain
 
 or
 
 affect
 
 the exercise of powers or functions of [FHFA] as a conservator or a receiver."
 
 12 U.S.C. § 4617
 
 (f) (emphasis added). An injunction barring FHFA's counterparty (Treasury) from participating in the net worth sweep would plainly affect FHFA's ability (as conservator) to participate in the net worth sweep.
 
 See
 

 Roberts
 
 ,
 
 889 F.3d at
 
 407 ;
 
 Robinson
 
 ,
 
 876 F.3d at
 
 233-34 ;
 
 Perry Capital
 
 ,
 
 864 F.3d at 615-16
 
 . And, as we have already concluded FHFA did not exceed its authority in agreeing to the net worth sweep, we conclude that the anti-injunction provision applies and ends the case against Treasury.
 
 [7]
 

 III.
 

 For these reasons, we affirm the district court's dismissal of the shareholders' suit.
 

 Officially, the Federal National Mortgage Association.
 

 Officially, the Federal Home Loan Mortgage Corporation.
 

 The Fifth Circuit also addressed constitutional questions concerning the conservator agency.
 
 See
 

 Collins v. Mnuchin
 
 ,
 
 896 F.3d 640
 
 , 652-76 (5th Cir. 2018) (per curiam). No constitutional questions are presented here.
 

 The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.
 

 We note that it is not clear whether the anti-injunction provision strips courts of jurisdiction, or merely precludes certain relief.
 
 Compare
 

 Collins
 
 , at 653 ("[W]e lack authority to grant relief on any of the Shareholders' statutory claims."),
 
 with
 

 Roberts
 
 ,
 
 889 F.3d at 403
 
 ("
 
 12 U.S.C. § 4617
 
 (f) bars declaratory or injunctive relief against [FHFA] unless it acted ultra vires or in a role other than as conservator or receiver."),
 
 and
 

 Perry Capital
 
 ,
 
 864 F.3d at 605
 
 (discussing how an analogous statute "shields from a court's declaratory and other equitable powers a broad swath" of conduct). This issue was not briefed by the parties, and we decline to address it because, in this case, dismissal under either Federal Rule of Civil Procedure 12(b)(1) or Rule 12(b)(6) requires the same analysis.
 

 The shareholders also assert that FHFA impermissibly agreed to the net worth sweep at Treasury's direction.
 
 See
 

 12 U.S.C. § 4617
 
 (a)(7) ("When acting as conservator or receiver, [FHFA] shall not be subject to the direction or supervision of any other agency of the United States or any State in the exercise of the rights, powers, and privileges of [FHFA]."). But the facts alleged in the shareholders' complaint show only that Treasury officials wanted FHFA to agree to the net worth sweep, not that Treasury directed or commandeered FHFA's exercise of its conservatorship powers.
 
 See
 

 Roberts
 
 ,
 
 889 F.3d at 406
 
 ("Even if, as the complaint alleges, Treasury officials made statements suggesting that Treasury was in the driver's seat and had to convince [FHFA] to come along for the ride, such behavior alone would not violate section 4617(a)(7).").
 

 Our determination that HERA's anti-injunction provision bars this suit means we need not address the parties' remaining arguments.