11-3408-cv, 11-3285-cv
Town of Babylon v. FHFA, Natural v. FHFA

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: September 14, 2012    Decided: October 24, 2012)

Docket Nos. 11-3408-cv, 11-3285-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TOWN OF BABYLON,

            Plaintiff-Appellant,

                v.

FEDERAL HOUSING FINANCE AGENCY, EDWARD DEMARCO, in his capacity
as Acting Director of Federal Housing Finance Agency, OFFICE OF
THE COMPTROLLER OF THE CURRENCY, a component of the United
States Department of the Treasury, JOHN G. WALSH, Acting
Comptroller of the Currency,

            Defendants-Appellees,

CHARLES E. HALDEMAN, JR., in his capacity as Chief Executive
Officer of the Federal Home Loan Mortgage Corporation, MICHAEL
J. WILLIAMS, in his capacity as Chief Executive Officer of the
Federal National Mortgage Association,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NATURAL RESOURCES DEFENSE COUNCIL, INC.,

            Plaintiff-Appellant,

                v.

FEDERAL HOUSING FINANCE AGENCY, EDWARD DEMARCO, Acting
Director, FEDERAL HOUSING FINANCE AGENCY, OFFICE OF THE

COMPTROLLER OF THE CURRENCY, a component of the United States Department of the Treasury, JOHN G. WALSH, Acting Comptroller of the Currency,

Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before:  WINTER, CABRANES, and CARNEY, Circuit Judges.

This opinion disposes of two separate appeals from two district courts heard in tandem.  Plaintiffs-appellants Town of Babylon and the National Resources Defense Council appeal from grants of motions to dismiss in favor of appellees Federal Housing Finance Agency and the Office of the Comptroller of the Currency in the Eastern District of New York (Leonard D. Wexler, Judge) and Southern District of New York (Shira A. Scheindlin, Judge), respectively.  Appellants argue that the district courts erred in concluding that 12 U.S.C. § 4617 precludes judicial review of a Directive issued by the FHFA to Fannie Mae, Freddie Mac, and the Federal Home Loan Banks and also that they lacked standing to pursue their claims against the Office of the Comptroller of the Currency.  We affirm.

ERIK A. ORTMANN (William J. Tinsley Jr., Christopher K. Smith, on the brief), Goldberg & Connolly, Rockville Centre, New York, for Plaintiff-Appellant Town of Babylon.

HOWARD N. CAYNE (Lisa S. Blatt, Asim Varma, on the brief), Arnold & Porter LLP, Washington, D.C., for Stephen E. Hart, Federal Housing Finance Agency, for Defendant-Appellees Federal Housing Finance Agency and Edward

DeMarco.

THOMAS A. MCFARLAND (Varuni Nelson, Assistant United States Attorney, Julie L. Williams, Daniel P. Stipano, Horace G. Sneed, Douglas B. Jordan, Office of the Comptroller of the Currency, on the brief), Assistant United States Attorney for Loretta E. Lynch, United States Attorney for the Eastern District of New York, for Defendant-Appellees Office of the Comptroller of the Currency and John G. Walsh.

KATHERINE KENNEDY (Benjamin H. Longstreth, on the brief), Natural Resources Defense Council, New York, New York, for Plaintiff-Appellant Natural Resources Defense Council.

BERTRAND MADSEN (Benjamin H. Torrance, on the brief), Assistant United States Attorneys, for Preet Bharara, United States Attorney for the Southern District of New York, for Defendant-Appellees Office of the Comptroller of the Currency and John G. Walsh.

WINTER, Circuit Judge:

This opinion disposes of separate appeals from two different district courts. We heard the appeals in tandem because of the similarity of the issues raised.

The Town of Babylon and the Natural Resources Defense Council, Inc. ("NRDC") appeal from orders entered by Judge Wexler in the Eastern District of New York and Judge Scheindlin in the

3

Southern District of New York, respectively.  The district courts dismissed appellants' complaints against the Federal Housing Financing Agency ("FHFA")[1] and the Office of the Comptroller of the Currency ("OCC").[2]  Appellants claimed that a Directive of the FHFA and a Bulletin of the OCC adversely impacted the operation of first-lien Property Assessed Clean Energy ("PACE") programs.  The district courts dismissed the actions on the grounds that:  (i) the claims against the FHFA were precluded by 12 U.S.C. § 4617(f), and (ii) appellants lacked Article III standing to pursue claims against the OCC.  We affirm.

BACKGROUND

PACE programs are operated by local governments.  They encourage property owners to make home improvements that reduce energy consumption, promote clean energy, create local jobs, and reduce greenhouse gas emissions, thereby mitigating the effect of global climate change.  The local governments offer financing to commercial and residential property owners to fund the cost of the property improvements.  Typically, the owners repay the particular local government, which calls the financing advances

---

[1] The Federal Housing Finance Agency, or FHFA, was established in 2008 by the Housing and Economic Recovery Act ("HERA") to regulate Fannie Mae, Freddie Mac, and/or the Federal Home Loan Banks ("FHLBs").  See 12 U.S.C. § 4511(a), (b)(2).  Under 12 U.S.C. § 4617, the FHFA has the power to appoint itself as a conservator or receiver of Fannie Mae, Freddie Mac, and/or the FHLBs.  The FHFA appointed itself conservator over both Fannie Mae and Freddie Mac in September 2008 and remains conservator over both entities.  See Fed. Hous. Fin. Agency, Statement of FHFA Director James B. Lockhart Announcing Conservatorship of Fannie Mae and Freddie Mac (2008).

[2] The Office of the Comptroller of the Currency is a federal agency that charters, regulates, and supervises all national banks.

4

"assessments," on a scheduled periodic basis.  If a scheduled payment is not made, in many PACE programs, the delinquent amount attaches to the real property as a "tax lien."  Such a lien has priority over any other lien attached to the property, including new and preexisting mortgage liens, and stays with the property in the event of sale.  However, some PACE programs do not carry such priority and are not affected by this litigation.  The Town of Babylon operates a PACE financing program styled the Long Island Green Homes program ("LIGH").  It includes a lien-priority provision.

NRDC alleges that "first lien status is critical to the success of PACE programs" because junior lienholders typically lose the entire value at stake in a foreclosure.  In contrast, it alleges, "PACE lien seniority is immaterial to holders of the underlying mortgages," because the assessments are relatively small, the risk of default is lessened by the improvement in the owner's financial status due to energy cost savings, and the value of the collateral is increased.

The Federal National Mortgage Association, commonly known as Fannie Mae, and the Federal Home Loan Mortgage Corporation, commonly known as Freddie Mac, are federally chartered corporations of a type commonly referred to as Government-Sponsored Enterprises.  The entities together own or guarantee close to half of the home loans in the United States, and the value of the combined debt and mortgage-related assets of the two

entities along with the Federal Home Loan Banks ("FHLB") exceeds $5.9 trillion. As noted by Judge Wexler in the Town of Babylon matter, "The position held in the home mortgage business by Fannie Mae and Freddie Mac make them the dominant force in that market. . . . [I]t is not a stretch to assume that lenders in the home financing market are guided in their decisions by Fannie Mae and Freddie Mac requirements." Town of Babylon v. Fed. Hous. Fin. Agency, 790 F. Supp. 2d 47, 49-50 (E.D.N.Y. 2011). In September 2008, as discussed in more detail infra, FHFA appointed itself conservator over Fannie Mae and Freddie Mac.

On July 6, 2010, the FHFA issued a Directive ("FHFA Directive" or "Directive") directing Fannie Mae and Freddie Mac to take "prudential actions," "not limited to" certain enumerated suggestions not pertinent here,[3] to protect themselves against safety and soundness concerns -- risks -- raised by PACE programs

---

[3] These suggestions were as follows:

> Adjusting loan-to-value ratios to reflect the maximum permissible PACE loan amount available to borrowers in PACE jurisdictions;
>
> Ensuring that loan covenants require approval/consent for any PACE loan;
> Tightening borrower debt-to-income ratios to account for additional obligations associated with possible future PACE loans;
>
> Ensuring that mortgages on properties in a jurisdiction offering PACE-like programs satisfy all applicable federal and state lending regulations and guidance.

Fed. Hous. Fin. Agency, Statement on Certain Energy Retrofit Loan Programs 2 (2010).

that impose priority or first-liens on participating properties like LIGH. Fed. Hous. Fin. Agency, Statement on Certain Energy Retrofit Loan Programs 2 (2010). The Directive also directed the FHLBs "to review their collateral policies in order to assure that pledged collateral is not adversely affected by energy retrofit programs that include first liens." Id.

The concerns expressed were related only to the subordination of mortgage liens to PACE-related first-lien priorities. Nothing in the Directive or other associated publications of the FHFA suggests any concern over PACE programs that do not impose first-lien priorities. Indeed, FHFA expressly disclaimed any such concern in its Directive Id. ("Nothing in this Statement affects the normal underwriting programs of the regulated entities or their dealings with PACE programs that do not have a senior lien priority.").

The same day, the OCC issued "Supervisory Guidance" in the form of a Bulletin ("Bulletin" or "OCC Bulletin") stating that national banks "need to be aware of the FHFA's directives" and "should take steps to mitigate exposures and protect collateral positions," as well as "consider the impact of tax-assessed energy advances on . . . asset valuations" when investing in mortgage-backed securities. Office of the Comptroller of the Currency, OCC Bull. No. 2010-25, Property Assessed Clean Energy (PACE) Programs 1-2 (2010).

Subsequent to the actions of the FHFA and the OCC, Fannie

Mae and Freddie Mac each issued statements declaring that they would no longer purchase mortgages secured by properties subject to first-lien PACE obligations. See Freddie Mac, Bull. No. 2010-20, Mortgages Secured by Properties with an Outstanding Property Assessed Clean Energy (PACE) Obligation 1 (2010); Fannie Mae, Announcement SEL-2010-12, Options for Borrowers with a PACE Loan 2 (2010). On February 28, 2011, the FHFA, by letter, directed Fannie Mae and Freddie Mac to "continue to refrain from purchasing mortgage loans secured by properties with outstanding first-lien PACE obligations," and "undertake other steps as may be necessary to protect their safe and sound operations from these first-lien PACE programs." Letter from Alfred M. Pollard, General Counsel, FHFA, to Timothy J. Mayopoulos, General Counsel, Fannie Mae, and Robert E. Bostrom, General Counsel, Freddie Mac (February 28, 2011).

The alleged result of these various statements has been reduced participation in, and diminished viability of, LIGH and other first-lien PACE programs. The Town of Babylon and the NRDC then brought the present actions asserting a host of legal theories, including, as relevant to this appeal, violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, for acting in an arbitrary and capricious manner; violation of the APA, 5 U.S.C. § 553(b),(c), and the Housing and Economic Recovery Act ("HERA"), 12 U.S.C. § 4526(b), for failure to solicit notice and comment; and violation of the National Environmental Policy Act

8

("NEPA"), 42 U.S.C. § 4332(2)(C), for failure to prepare an environmental impact statement. <u>See</u> Complaint at 14-18, ¶¶ 53-75, <u>Town of Babylon v. Fed. Hous. Fin. Agency</u>, 790 F. Supp. 2d 47 (E.D.N.Y. 2011) (No. 10-cv-4916); Second Amended Complaint at 19-20, ¶¶ 55-66, <u>NRDC v. Fed. Hous. Fin. Agency</u>, 815 F. Supp. 2d 630 (S.D.N.Y. 2011) (No. 10-cv-7647). Both district courts concluded that the claims against the FHFA for the issuance of the Directive were expressly precluded by 12 U.S.C. § 4617(f). <u>Town of Babylon</u>, 790 F. Supp. 2d at 54; <u>NRDC v. Fed. Hous. Fin. Agency</u>, 815 F. Supp. 2d at 642. Both district courts also concluded that appellants lacked constitutional standing to challenge the OCC's actions because the redressability requirement was not satisfied. <u>Town of Babylon</u>, 790 F. Supp. 2d at 55-56; <u>NRDC v. Fed. Hous. Fin. Agency</u>, 815 F. Supp. 2d at 639-41. The district courts therefore dismissed appellants' respective complaints. <u>Town of Babylon</u>, 790 F. Supp. 2d at 56; <u>NRDC v. Fed. Hous. Fin. Agency</u>, 815 F. Supp. 2d at 642. For the reasons stated <u>infra</u>, we affirm.

DISCUSSION

We review a district court's grant of a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) <u>de novo</u>, <u>Klein & Co. Futures, Inc. v. Bd. of Trade</u>, 464 F.3d 255, 259 (2d Cir. 2006), accepting as true factual allegations made in the complaint, and drawing all reasonable inferences in favor of the plaintiffs. <u>Holmes v. Grubman</u>, 568 F.3d 329, 335 (2d. Cir. 2009).

9

a) <u>Section 4617(f)</u>

In 2008, the FHFA appointed itself as the conservator of Fannie Mae and Freddie Mac pursuant to authority granted by 12 U.S.C. § 4617. The appointment was based on a determination that "unsafe or unsound condition[s]" existed. 12 U.S.C. § 4617(a)(3)(C). <u>See</u> Fed. Hous. Fin. Agency, Statement of FHFA Director James B. Lockhart Announcing Conservatorship of Fannie Mae and Freddie Mac (2008).

Section 4617 empowers the FHFA as a conservator to "take such action as may be -- (i) necessary to put the regulated entity in a sound and solvent condition; and (ii) appropriate to carry on the business of the regulated entity and preserve and conserve the assets and property of the regulated entity." 12 U.S.C. § 4617(b)(2)(D). Judicial review of "the exercise of powers or functions of the [FHFA] as a conservator" is prohibited "[e]xcept as provided in [Section 4617]." <u>Id.</u> § 4617(f). Nothing in Section 4617 authorizes judicial review in the present circumstances.

Appellants argue that the Directive was not issued pursuant to FHFA's powers as a conservator. They note that even as a conservator, FHFA continues to have powers as a regulator, pursuant to 12 U.S.C. § 4526, that when exercised are subject to the notice and comment procedures of the APA and reviewable under 5 U.S.C. § 704. They then argue that FHFA exercised this general regulatory authority, rather than its powers as a conservator, when issuing the Directive because either: (i) the agency's

10

conservator powers do not include the power to issue the Directive; or (ii) the agency did not rely on powers as a conservator when issuing the Directive.

Argument (i) lacks any basis in the statutory language or legislative purpose. The FHFA Directive to Fannie Mae and Freddie Mac related concerns that PACE priority liens enhanced the risks associated with subordinated mortgages and directed the entities to protect themselves against such risks. As a conservator, FHFA was expressly empowered to take "such action as may be -- (i) necessary to put [Fannie Mae and Freddie Mac] in a sound and solvent condition; and (ii) appropriate to . . . preserve . . . [their] assets and property." 12 U.S.C. § 4617(b)(2)(D). Directing protective measures against perceived risks is squarely within FHFA's powers as a conservator.

Even if FHFA's powers as a regulator and conservator overlap, the exclusion of judicial review over the exercise of the latter would be relatively meaningless if it did not cover an FHFA directive to an institution in conservatorship to mitigate or avoid a perceived financial risk.

As for argument (ii), the FHFA's supposed silence in the Directive regarding the authority under which it was acting is irrelevant.[4] The statute excludes judicial review of "the

---

[4] Much ink has been consumed in arguments concerning a later statement by the FHFA (issued after these actions were filed) that it had acted in its role as a conservator in issuing the Directive to Fannie Mae and Freddie Mac. We need not address the issue because of our conclusion that the exclusion of judicial review under Section 4617(f) was triggered by the conservatorship and the nature of the Directive. The subsequent statement certainly did not render the Directive subject to judicial review.

11

exercise of powers or functions" given to the FHFA as a conservator. Id. § 4617(f). A conclusion that the challenged acts were directed to an institution in conservatorship and within the powers given to the conservator ends the inquiry. See Volges v. Resolution Trust Corp., 32 F.3d 50, 52 (2d Cir. 1994) (interpreting the scope of a virtually identical jurisdictional bar in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and concluding that no jurisdiction existed where "[t]he proposed sale of the Volges mortgages plainly f[ell] within the 'powers or functions of the [Resolution Trust Corporation] as a conservator or receiver'"). No particular talismanic incantation of authority is required to trigger Section 4617(f).[5]

b) Standing to Pursue Claims Against the OCC

"Article III, Section 2 of the Constitution limits the [subject matter] jurisdiction of the federal courts to the resolution of 'cases' and 'controversies.'" Mahon v. Ticor Title

---

[5]The FHFA's Directive addressed not only Fannie Mae and Freddie Mac but also the FHLBs. However, unlike Fannie Mae and Freddie Mac, the FHLBs are not under a conservatorship. Therefore the FHFA's Directive, insofar as it is directed to the FHLBs, is not shielded from judicial review by Section 4617(f).

However, to the extent that appellants challenge the FHFA Directive as it applies to the FHLBs, they have failed to show that the alleged injury is likely to be redressed by the relief sought. Unlike the Directive's direction to Fannie Mae and Freddie Mac to undertake affirmative action, the Directive required the FHLBs only "to review their collateral policies in order to assure that pledged collateral is not adversely affected by [PACE] programs that include first liens." Fed. Hous. Fin. Agency, Statement on Certain Energy Retrofit Loan Programs 2 (2010). For reasons discussed in Part b, infra, withdrawal of the Directive would not make it likely that the FHLBs would alter their practices.

12

Ins. Co., 683 F.3d 59, 62 (2d Cir. 2012) (citation and internal quotation marks omitted). "In order to ensure that this . . . case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 89 (2d Cir. 2009) (quoting W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008)) (internal quotation marks omitted). To establish Article III standing, one must show: (i) injury-in-fact, (ii) causation, and (iii) redressability. Id. The district courts found with regard to these claims that the last element, redressability, was absent. We agree.

Appellants allege both procedural injury -- the lack of solicitation of notice and comment as required by the APA, 5 U.S.C. § 553, and of an environmental impact statement as required by NEPA, 42 U.S.C. § 4332(2)(C) -- as well as substantive injury -- arbitrary and capricious agency action by the OCC -- resulting from the OCC's promulgation of the Bulletin.

Where, as here, a litigant complaining of procedural or substantive injury is not the regulated party, the litigant must demonstrate that favorable action by the agency is likely to result in favorable action by the regulated party in addition to demonstrating a link between the procedural or substantive injury to the litigant and the adverse agency action. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (noting the general rule that "it must be likely, as opposed to merely

13

speculative, that the injury will be redressed by a favorable decision" (internal quotations omitted)); id. at 562 (explaining that "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." (quoting Allen v. Wright, 468 U.S. 737, 758 (1984))); id. at 570-71 (plurality opinion) ("[R]edress of the only injury in fact respondents complain of requires action . . . by the individual funding agencies; and any relief the District Court could have provided in this suit against the Secretary was not likely to produce that action."); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 42-43 (1976) ("The complaint here alleged only that petitioners, by the adoption of [the] Revenue Ruling . . . had 'encouraged' hospitals to deny services to indigents. . . . It is purely speculative whether the denials of service specified in the complaint fairly can be traced to petitioners' 'encouragement' or instead result from decisions made by the hospitals without regard to the tax implications."); St. John's United Church of Christ v. FAA, 520 F.3d 460, 463 (D.C. Cir. 2008) (holding that a plaintiff injured by a regulated third party must demonstrate a likelihood that the third party would change action in the event that the defendant agency changes action, notwithstanding the fact that plaintiff has alleged a procedural injury).

Excluding the harm alleged to have resulted from the non-reviewable Directive to Fannie Mae and Freddie Mac, the only

14

injury alleged is the harm from the alteration of lending practices by national banks -- the institutions that are regulated by the OCC but are not parties to this litigation. However, if the OCC Bulletin were vacated, the national banks would remain entirely free to treat PACE-related properties on an unfavorable basis.[6]

Town of Babylon's pleadings and affidavits contain no allegation or assertion that the national banks regulated by the OCC would act differently were the OCC Bulletin vacated. NRDC's complaint similarly lacks any allegation that national banks regulated by the OCC would alter current practices if the OCC Bulletin were vacated.

NRDC did provide declarations by three municipal officials with experience on the city-planning side of PACE-program implementation. Each stated that if both the FHFA Directive and the OCC Bulletin were vacated, then national banks' lending practices would revert to the status quo ante (pre-July 6, 2010).

However, the FHFA Directive, as applied to Fannie Mae and Freddie Mac, cannot be vacated for reasons stated above, and none

---

[6] Therefore, the instant matter is distinguishable from New York Public Interest Research Group v. Whitman, 321 F.3d 316 (2d Cir. 2003). In Whitman, we stated briefly and in dicta that the lax standard traditionally applied to claims of procedural injury applied in the context of an injury caused in part by the actions of a regulated party. Id. at 326. Whitman involved a petition to the EPA regarding the failure to issue objections to draft permits issued by the state agency that were not in compliance with the Clean Air Act. Id. at 319, 323. If the EPA were to object to the permits, the cessation of the injury-causing action (that led to uncertainty about harm caused by the stationary pollution source) would have necessarily followed. 42 U.S.C. § 7661d(b)(3). Here, even if the Bulletin were vacated, the banks regulated by the OCC would still be entirely free to adjust mortgage practices regarding LIGH and other first-lien PACE program participating homes.

15

of the declarations stated, or could state, that vacatur of the OCC Bulletin alone would result in national banks resuming their status quo ante lending practices.  Nothing in the OCC Bulletin compelled national banks to take any action.  The Bulletin is labeled "Supervisory Guidance," and is couched in entirely permissive language.  See Office of the Comptroller of the Currency, OCC Bull. No. 2010-25, Property Assessed Clean Energy (PACE) Programs 1-2 (2010) ("National banks need to be aware of the FHFA's directives . . . . National bank lenders should take steps to mitigage exposures and protect collateral positions . . . . [B]anks that invest in mortgage backed securities . . . should consider the impact of tax-assessed energy advances." (emphasis added)).  The Bulletin alerts recipient banks only to the need for calculating a risk that varies from locality to locality.  Were the Bulletin withdrawn, the need for a calculation would remain.

A return to the status quo ante by the banks after vacatur of the Bulletin would be a likely result only if the banks calculated the risks and benefits exactly as they are alleged to be by NRDC.  That is not a necessary result.  More critically, however, even if the OCC Bulletin were vacated, Fannie Mae's and Freddie Mac's refusal to purchase mortgages of properties subject to first-lien PACE programs would remain in force.  Any contention that national banks would continue to lend on the same terms as before the issuance of the OCC Bulletin must simply ignore the impact of Fannie Mae's and Freddie Mac's changes in policy.

Therefore, we conclude that appellants have failed to show that it is likely, as opposed to merely speculative, that their claims against the OCC would be redressed by vacatur of the Bulletin, and the claims against the OCC were properly dismissed for lack of standing.

CONCLUSION

For the reasons above, the district courts' judgments are affirmed.