**Chantay SEWELL, Plaintiff,**

v.

**Phil BERNARDIN, Defendant.**

No. 14–CV–0007.

United States District Court,
E.D. New York.

Signed Aug. 2, 2014.

Law Office of Harvey S. Mars, LLC, New York, NY, by Harvey S. Mars, Esq., of Counsel, for Plaintiff.

Certain & Zilberg, PLLC, New York, NY, by Gary Certain, Esq., of Counsel, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On January 2, 2014, the Plaintiff Chantay Sewell (the "Plaintiff") commenced this action against the Defendant Phil Bernardin (the "Defendant"), who she alleges hacked her American Online ("AOL") e-mail account (the "AOL Account") and her Facebook social media account (the "Facebook Account," and collectively, with the AOL Account, the "Internet Accounts"). In this regard, pursuant to the Computer Fraud and Abuse Act of 2008, 18 U.S.C. § 1030 *et seq.* ("CFAA"), the Plaintiff alleges that the Defendant intentionally accessed her computer without authorization and obtained her personal information, electronic messages, electronic posts, contacts lists, and other material stored on her Internet Accounts.

The Plaintiff also brings a claim against the Defendant pursuant to the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ("SCA"), for unlawful access to stored communications. Lastly, the Plaintiff asserts a trespass to chattels cause of action pursuant to New York State common law.

Presently before the Court is a motion by the Defendant to dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6). The Court pauses here to note that the Defendant's submissions use footnotes, which is contrary to this Court's Individual Rule II.A. Notwithstanding this infraction, the Court will consider the Defendant's papers in rendering its decision. However, the Court advises the Defendant's counsel that any future filings that contain footnotes will not be considered by this Court.

For the reasons that follow, the Defendant's motion is granted.

## I. BACKGROUND

Unless otherwise stated, the following facts are drawn from the Plaintiff's Complaint and are construed in a light most favorable to the Plaintiff.

### A. Factual Background

The Plaintiff is an individual residing in the State of New York, County of Queens. In her opposition to the Defendant's motion to dismiss, the Plaintiff states that in or about 2002, she became involved in a romantic relationship with the Defendant. This relationship lasted about nine years and was terminated in or about 2011.

The Plaintiff maintained private electronic accounts with several internet service providers. Of relevance here, the Plaintiff had an e-mail account with AOL. In addition, she had a social media account with the website Facebook. She was the sole authorized user of these Internet Accounts and maintained private passwords for them. Through the Internet Accounts, the Plaintiff maintained information electronically, including her personal information, electronic messages, electronic posts, and contact lists.

According to the Plaintiff, she did not knowingly provide the Defendant or any other third parties with the means to access the Internet Accounts. In this regard, the Plaintiff never provided the Defendant with the passwords for the Internet Accounts, nor did she authorize him to obtain and/or utilize said passwords.

The Plaintiff alleges that on an unspecified date, the Defendant gained unauthorized access to the passwords for the Internet Accounts while he was at the Plaintiff's home. Then, without permission, the Defendant later used the passwords to access the Internet Accounts. In this regard, on August 1, 2011, the

Plaintiff discovered that she could no longer log onto or access the AOL Account because her password had been altered. Similarly, on February 24, 2012, the Plaintiff discovered that she could no longer log onto or access her Facebook Account because her password was altered. The Complaint does not provide further details with respect to the length of time the Plaintiff was denied access to either of the Internet Accounts.

In the Complaint, the Plaintiff alleges that records from Verizon (the "Verizon Records") indicate that the Internet Accounts, as well as the computer servers on which the Internet Accounts were stored, had been accessed without authorization or permission. In this regard, based on exhibits the Plaintiff submitted with her opposition papers, it appears to the Court that the Plaintiff bases this allegation on the fact that the Verizon Records indicate that the Internet Accounts were accessed from an IP address associated with a computer located at the home address of the Defendant's wife, Tara Bernardin ("Tara"). Thus, the Plaintiff theorizes that the Defendant used his wife's computer to log onto the Internet Accounts and proceeded to their passwords so as to prevent the Plaintiff from accessing them.

The Plaintiff further alleges that without permission or authorization, the Defendant accessed the Plaintiff's Internet Accounts on additional dates beyond August 1, 2011 and February 24, 2012. These other dates include February 12, 2012, February 17, 2012, February 24, 2012, March 24, 2012, and March 26, 2012. According to the Plaintiff, through this unauthorized access of the Internet Accounts, the Defendant obtained access to the Plaintiff's electronic communications and electronic posts, which were in electronic storage. The Plaintiff also claims the Defendant ob-

tained access to other personal and identifying information about her.

In addition, the Plaintiff alleges that Defendant used the Internet Accounts to publically post private information about the Plaintiff and to communicate with third parties while posing as the Plaintiff. For example, on an unspecified date in 2011, she alleges that the Defendant apparently sent an e-mail message from the AOL Account and a Facebook message from the Facebook Account to the Plaintiff's family and friends using the Plaintiff's contacts lists, which she maintained privately within the Internet Accounts. These messages contained malicious statements about the Plaintiff regarding certain sexually transmitted diseases and sexual activities.

Moreover, according to the Plaintiff, the Defendant engaged in a malicious campaign of unlawfully accessing and trespassing into the Internet Accounts and accessing her personal and confidential information, which were contained in the Internet Accounts. As a result of the Defendant's conduct, the Plaintiff claims to have incurred monetary expenses in order to investigate the breaches to the Internet Accounts and to protect them from future unauthorized access.

### B. Procedural History

On or about May 23, 2013, in a separate action, the Plaintiff filed suit against the Defendant's wife, Tara, and John Does 1–5, in the Supreme Court of the State of New York, Queens County. The Plaintiff accused Tara of computer fraud and brought the following claims: (1) fraud in connection with computers in violation of the CFAA; (2) unlawful access to stored communications in violation of the SCA; (3) trespass to chattels; and (4) civil conspiracy.

On June 18, 2013, Tara removed the case, entitled *Sewell v. Tara Bernardin*

and John Does 1–5, 13–CV–03458–JS–AKT ("*Sewell I*"), to the United States District Court for the Eastern District of New York, and the case was assigned to United States District Judge Joanna Seybert and United States Magistrate Judge A. Kathleen Tomlinson. On September 13, 2013, Tara moved pursuant to Fed. R. Civ. P. 12(c) to dismiss the Plaintiff's complaint on the pleadings. About two weeks later, on September 27, 2013, the Plaintiff notified the Court that (1) she had accepted an offer of judgment by Tara in the amount of $2,250 and (2) she had voluntarily dismissed the action against the John Doe defendants without prejudice pursuant to Fed.R.Civ.P. 41(a)(1)(a)(i).

As a result, on October 3, 2013, Judge Seybert entered an order directing the Clerk of the Court to enter judgment in favor of the Plaintiff and mark the case closed. Thereafter, on January 2, 2014, the Plaintiff commenced the present action.

## II. DISCUSSION

### A. Legal Standard on a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss

It is well-established that a complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In this regard, when deciding a motion to dismiss, a court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *In re NYSE Specialists Secs. Litig.,* 503 F.3d 89, 91 (2d Cir. 2007). As such, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

However, "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937). In addition, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [a] plaintiff['s] possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *see also Karmilowicz v. Hartford Fin. Servs. Grp.,* 494 Fed. Appx. 153, 156 (2d Cir.2012).

### B. Legal Standard Under the CFAA

"The CFAA is a criminal statute that provides, among other things, that '[w]hoever ... knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value ... shall be punished as provided in subsection (c) of this section.'" *Schaeffer v. Kessler,* 12 CIV. 8576 PKC, 2013 WL 1155587, at *5 (S.D.N.Y. Mar. 20, 2013) (quoting 18 U.S.C. § 1030(a)(4)); *see also Poller v. BioScrip, Inc.,* 974 F.Supp.2d 204, 231 (S.D.N.Y.2013) (quoting *Nexans Wires S.A. v. Sark–USA, Inc.,* 166 Fed.Appx. 559, 561–62 (2d Cir.2006) (in turn, citing 18 U.S.C. § 1030(a))) ("The CFAA penalizes, *inter alia,* unauthorized access to protected computers with intent

to defraud or cause damage."). These penalties include imposition of a fine or a term of imprisonment. 18 U.S.C. § 1030(c).

 The Court notes that it is "inappropriate to expand the CFAA in a manner not consistent with the statute's plain meaning, and, in so doing, transform what has always been a common law civil tort (i.e., misappropriation of confidential information) into a federal criminal offense." *Jet One Group, Inc. v. Halcyon Jet Holdings*, No. 08–CV–3980 (JS)(ETB), 2009 WL 2524864, at *7 (E.D.N.Y.2009). Nevertheless, although primarily a criminal statute, the CFAA does "provide[ ] a civil cause of action in limited circumstances." *Garland–Sash v. Lewis*, 05 CIV 6827 WHP, 2011 WL 6188712, at *2 (S.D.N.Y. Dec. 6, 2011). In this regard, the CFAA states that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief," so long as "the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV) or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g); *see also Penrose Computer Marketgroup, Inc. v. Camin*, 682 F.Supp.2d 202, 207 (N.D.N.Y. 2010) (quoting *Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.*, No. 08–CV–3980 (JS)(ETB), 2009 WL 2524864, at *5 (E.D.N.Y. Aug. 14, 2009)) ("The CFAA, in relevant part, provides a private federal cause of action against a person who 'intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... information from any protected computer.' ").

Of relevance here, subsection "(c)(4)(A)(i)(I), applies to 'loss to 1 or more persons during any 1–year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value.' " *Penrose Computer Marketgroup, Inc.*, 682 F.Supp.2d at 207 (quoting 18 U.S.C. § 1030(c)(4)(A)(i)(I)) Accordingly, in order to survive at the motion to dismiss stage, a "[p]laintiff's complaint must allege 'loss aggregating at least $5,000 in value.' " *Id.* (quoting 18 U.S.C. § 1030(c)(4)(A)(i)(I)).

The CFAA defines "damages" as "any impairment to the integrity or availability of data, a program, a system or information." 18 U.S.C. § 1030(e)(8). However, under the CFAA, "[d]amages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages." 18 U.S.C. § 1030(g).

Moreover, the CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). "Courts have interpreted this provision to limit lost revenue to those losses attributable to an interruption of service." *Poller*, 974 F.Supp.2d at 232. This includes "remedial costs of investigating the computer for damage, remedying the damage, and any cost incurred because the computer cannot function while or until repairs are made." *Nexans Wires S.A. v. Sark–USA, Inc.*, 319 F.Supp.2d 468, 474 (S.D.N.Y.2004); *see also Tyco Intern. (US) Inc. v. John Does, 1–3*, No. 01 CIV. 3856, 2003 WL 23374767, at *3 (S.D.N.Y. Aug. 29, 2003) (collecting cases) ("Additional types of damage awarded by courts under the [CFAA] have generally been limited to those costs necessary to assess the damage caused to the

plaintiff's computer system or to resecure the system in the wake of a spamming attack.").

According to the Plaintiff's Complaint, the Defendant "intentionally accessed a computer (i.e., the computers owned by Facebook, Inc. and AOL, Inc.) without authorization or exceeded authorized access, and thereby obtained information from a protected computer, namely Sewell's personal information, electronic messages, electronic posts, contact lists, and other material stored in her Internet Accounts." (Compl., ¶ 26.) As such, it appears to the Court that the Plaintiff is alleging that the Defendant violated 18 U.S.C. § 1030(a)(2)(C), which prohibits an individual from "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] information from any protected computer." In addition, the Plaintiff's opposition papers assert that she is also alleging that the Defendant violated 18 U.S.C. §§ 1030(a)(5)(B) and (C), which prohibit an individual from "intentionally access[ing] a protected computer without authorization, and as a result of such conduct causes damage and loss" or "recklessly causes damage."

In relevant part, the CFAA defines "protected computer" as a computer "which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." 18 U.S.C. § 1030(e)(2)(B). Thus, in order to satisfy this element, a " '[p]laintiff must plead facts that give rise to a plausible inference of substantial use of the computer for ends related to interstate commerce.' " *Tan v. Doe,* 14–CV–2663 (ALC), 2014 WL 1779048, at *1 (S.D.N.Y. May 5, 2014) (citing *Quantlab Techs. Ltd., (BVI)*

*v. Godlevsky,* 719 F.Supp.2d 766, 775–76 (S.D.Tex.2010)). As for the term "without authorization," although the CFAA does not provide a definition, courts have given this term its literal meaning, which means "without any permission at all." *JBCHoldings NY, LLC v. Pakter,* 931 F.Supp.2d 514, 523 (S.D.N.Y.2013) (collecting cases).

"A[ ] [civil] action under [the CFAA] must be brought within two years of 'of the act complained of or the date of the discovery of the damage.' " *FTA Mkt. Inc. v. Vevi, Inc.,* 11 CV 4789 VB, 2012 WL 383945, at *3 (S.D.N.Y. Feb. 1, 2012). Thus, the statute of limitations for a CFAA claim "begins to run on the date of the discovery of the damage." *Id.,* at *4. This means that "in order to proceed, a plaintiff must file suit within two years of discovering 'any impairment to the integrity or availability of data, a program, a system, or information.' " *Clark St. Wine & Spirits v. Emporos Sys. Corp.,* 754 F.Supp.2d 474, 486 (E.D.N.Y.2010) (citing 18 U.S.C. §§ 1030(e)(8) and (g)).

### C. Legal Standard for a SCA Claim

Like the CFAA, the SCA is a criminal statute that "also creates a civil cause of action that allows any 'subscriber, or other person aggrieved' by a knowing or intentional violation of [the SCA] to recover damages from the violator." *Sood v. Rampersaud,* 12 CV 5486 VB, 2013 WL 1681261, at *2 (S.D.N.Y. Apr. 17, 2013) (quoting 18 U.S.C. § 2701). A person violates the SCA if he or she "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system[.]" 18

U.S.C. § 2701(a); *see also Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F.Supp.2d 548, 555 (S.D.N.Y.2008) ("Thus, a person violates the SCA if she accesses an electronic communication services, or obtains an electronic communication while it is still in electronic storage, without authorization.").

In this context, an "electronic communication service" means "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). "Electronic storage" is defined as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication ..." 18 U.S.C. § 2510(7)(A) and (B).

"The aim of the [SCA] was, in part, to protect individuals' privacy interests in personal and proprietary information." *Kaufman v. Nest Seekers, LLC*, No. 05 CV 6782(GBD), 2006 WL 2807177, at *4 (S.D.N.Y.2006) (citations omitted). As such, "[i]t was primarily designed to provide a cause of action against computer hackers" so as to "address[ ] the growing problem of unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public." *Id.* (citations omitted). *See also Penrose Computer Marketgroup, Inc.*, 682 F.Supp.2d at 209 (same).

The statute of limitations for a civil action brought pursuant to the SCA is two years. 18 U.S.C. § 2707(f). In this regard, a plaintiff must bring his or her claim no "later than two years after date upon which the [plaintiff] first discovered or had a reasonable opportunity to discover the violation." *Id.*

## D. As to Whether the Plaintiff's CFAA and SCA Claims are Time–Barred

■ As a preliminary matter, the Court must first resolve whether the Plaintiff's CFAA and SCA claims are time-barred. *See, e.g., Coleman v. B.G. Sulzle, Inc.*, 402 F.Supp.2d 403, 411 (N.D.N.Y.2005) ("Even though defendants raise their statute of limitations defense in the alternative, the court will address this argument first because if defendants prevail, their other arguments would become moot."). "On a Rule 12(b)(6) motion, the Court may only dismiss an action based on the statute of limitations if, on the face of the complaint, it is clear that the claim is untimely." *FTA Mkt. Inc.*, 2012 WL 383945, at *3. In this case, the Court finds that assuming the Plaintiff's factual allegations are true, the statute of limitations for both the CFAA and the SCA claims expired before the Plaintiff commenced the instant lawsuit, and therefore, this action must be dismissed.

As indicated above, "[t]he latest a CFAA cause of action may be commenced is two years from 'the date of discovery of the damage.'" *Smartix Int'l Corp. v. Master-Card Int'l LLC*, 06 CV 5174(GBD), 2008 WL 4444554, at *3 (S.D.N.Y. Sept. 30, 2008), *aff'd*, 355 Fed.Appx. 464 (2d Cir. 2009) (quoting 18 U.S.C. § 1030(g)). Moreover, the CFAA defines "damage" as "any impairment to the integrity *or availability* of data, a program, a system, or information." 18 U.S.C. § 1030(g) (emphasis added).

■ Here, the Plaintiff commenced this action on January 2, 2014. However, in her Complaint, she alleges that on August 1, 2011, she first discovered she could no longer access the AOL Account as her password had been altered. As such, she clearly discovered the damage at issue—

that is the impairment to the availability of the AOL Account—more than two years prior to initiating the present lawsuit.

Moreover, although the Plaintiff did not discover that she was unable to access the Facebook Account until February 24, 2012, she was already aware that the integrity of her computer had been compromised based on her August 1, 2011 discovery concerning her inability to access the AOL Account. *See FTA Mkt. Inc.,* 2012 WL 383945, at *4 (S.D.N.Y. Feb. 1, 2012) ("Plaintiff asserts defendants continue to access its computer systems, as alleged in the complaint. . . . This argument is inconsistent with the rest of the complaint and does not extend the limitations period."); *Smartix Int'l Corp.,* 2008 WL 4444554, at *3 (dismissing a CFAA cause of action alleging "two separate and distinct CFAA violations," even though one of the alleged violations fell within the two-year statute of limitations period, because "the statute of limitations began to run . . . when plaintiff [first] discovered that its [ ] data and information was unavailable and/or its usability was impaired, and that its computer equipment had been damaged").

For this reason, the Court dismisses the CFAA cause of action as untimely. As a consequence, the Court need not resolve whether the Plaintiff has stated a claim for relief under the CFAA. *FTA Mkt. Inc.,* 2012 WL 383945, at *4 ("Because the Court dismisses plaintiffs CFAA claim on statute of limitations grounds, it will not address whether plaintiff has properly stated a claim under CFAA.").

■ Similarly, as previously stated, an SCA claim is time-barred if it is not brought within "two years after the date upon which the claimant first discovered or had reasonable opportunity to discover the violation." 18 U.S.C. § 2707(f); *see also Zaratzian v. Abadir,* 10 CV 9049 VB, 2012 WL 9512531, at *7 n. 3 (S.D.N.Y. May 30, 2012) ("The statute of limitations for violations of the Wiretap Act and the Stored Communications Act is two years after plaintiff has had a "reasonable opportunity to discover the violation." ") (quoting 18 U.S.C. §§ 2520(e) and 2707(f)). Here, the Plaintiff would have discovered or had reasonable opportunity to discover the alleged SCA violations when she was prevented from accessing her electronic communication while it was in electronic storage in her Internet Accounts. *See* 18 U.S.C. 2701(a).

In this regard, the Plaintiff's SCA claim consists of two alleged violations: (1) that the Defendant intentionally accessed without authorization a facility owned and operated by AOL, Inc., thereby preventing the Plaintiff from accessing electronic communication while they were stored in the AOL Account; and (2) that the Defendant intentionally accessed without authorization a facility owned and operated by Facebook, Inc., thereby preventing the Plaintiff from accessing electronic communications while they were stored in the Facebook Account. Concerning the first purported violation, as discussed above, the Plaintiff discovered she was unable to access the AOL Account on August 1, 2011. As such, she was required to bring this claim within two years of that date, and her failure to do so renders her SCA cause of action premised on this violation untimely. *See, e.g., Maddalena v. Toole,* 2:13–CV–4873–ODW, 2013 WL 5491869, at *4–5 (C.D.Cal. Oct. 1, 2013).

With respect to the second violation that makes up the Plaintiff's SCA claim, the Court finds that this part is also time-barred. While the Plaintiff learned that she could no longer access the electronic communications stored in the Facebook Account on February 24, which is less than two years before her commencement of this action on January 2, 2014, she none-

theless "had a reasonable opportunity to discover [the Defendant's] illegal activity" on August 1, 2011, when she first discovered that the AOL Account had been compromised. *Id.* at *5 (holding that "[the] [p]laintiffs' argument that the 'secretive technological nature' of the [defendant's] wrongdoing prevented them from fully discovering ... the extent to which he was monitoring their activities [to be] [irrelevant]" in the context of resolving whether their federal claims under the Electronic Communications Privacy Act, the SCA and the CFAA were time-barred, because a plaintiff "does not need to discover every type and means of the defendant's misconduct" or "even know the exact perpetrator of an injury to have sufficient notice to bring suit" so long as the plaintiff "[was] aware of the immediate injury giving rise to [her] federal claims"). Accordingly, the Plaintiff may not proceed with her SCA claim based on this second alleged violation.

### E. As to the Plaintiff's Remaining Trespass to Chattel Claim

In addition to her federal claims, the Plaintiff brings a trespass to chattel claim pursuant to New York common law. In this regard, she alleges that (1) she had personal property rights to the information she stored on the Internet Accounts and (2) when the Defendant logged onto the Internet Accounts and accessed her information, he violated New York's trespass to chattel law.

 However, a court "may decline to exercise supplemental jurisdiction over a [pendent state law] claim" if the court "has dismissed all [federal] claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Once [a court's] discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity in decid-

ing whether to exercise jurisdiction." *Kolari v. N.Y.–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) (internal citation and quotation marks omitted).

Having dismissed the Plaintiff's federal claims, and given the early stage of this litigation, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. Therefore, the motion to dismiss the Plaintiff's trespass to chattel claim is granted without prejudice.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the motion to dismiss by the Defendant is granted, and the Clerk of the Court is directed to close this case.

**SO ORDERED.**